UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | NUMBER |
| **BRETT A. SCHERMER** | **02-11942** |
| **KIMBERLY A. SCHERMER** | |
| DEBTORS | CHAPTER 7 |
| **DALE STAMPLEY and MARY STAMPLEY** | ADV. NUMBER |
| PLAINTIFFS | **03-1001** |
| V. | |
| **BRETT A. SCHERMER and** | |
| **KIMBERLY A. SCHERMER** | |
| DEBTORS | |

## MEMORANDUM OPINION

Dale and Mary Stampley ("Stampleys") sued debtors Brett and Kimberly Schermer to prevent their discharge pursuant to 11 U.S.C. §727(a)(4). The Stampleys complain that the debtors' schedules and statement of financial affairs contain numerous material misrepresentations and omissions that were knowingly and intentionally made and constitute false oaths. The debtors admit having made several scheduling errors and omissions, but contend that all were inadvertent and immaterial, and do not justify the severe penalty of denying their discharge.

**Facts**

The Stampleys are judgment creditors of the debtors, who filed their chapter 7 case on July 13, 2002. The Stampleys' lawyer conducted a Bankruptcy Rule 2004 examination of the debtors on November 29, 2002, during the course of which he learned that the Schermers' schedules omitted or incorrectly listed several assets. The assets comprised a hair dryer, a blender, a food chopper, compact discs, firearm ammunition, a storage shed, hand tools, seasonal decorations and ownership of Scher-Ley Cajun, L.L.C. ("SLC"). Kimberly Schermer also for the first time disclosed that, before the bankruptcy, items had been stolen from the shed at the debtors' home, including rain gear and children's fishing equipment, the value of which was not established.

The debtors amended their schedules and statement of financial affairs after the Rule 2004 examination and corrected some, but not all, of the errors. The theft loss was still not listed, nor was the ownership of SLC, the ammunition, the seasonal decorations or the shed and its contents.

The Stampleys' complaint specifically cited only the following six instances of omissions or errors on the debtors' Schedule B: incorrect information concerning a Citizens Bank account, including its balance (the debtors claimed their account balance was $10.00, rather than the actual balance of $83.00); incomplete disclosure and identification of all household goods and furnishings; undervaluation of a collection of Marilyn Monroe memorabilia (which the debtors valued at $100); inadequate description and undervaluation of jewelry items (worth $10 according to the debtors); failure to specifically identify the "2 rifles, pistol" and list ammunition for the guns; and undervaluation of the debtors' interests in Scher-Quality, Inc. ("SQ") and Schermer, Inc.

2

d/b/a Blondies. ("Blondies"). The Stampleys later amended the complaint to add the debtors' failure to disclose their 100 % ownership of SLC. Both debtors maintain that they disclosed their assets and financial information to the best of their knowledge, and that all omissions and misstatements were inadvertent and unintentional.

Kimberly Schermer admitted at trial that items such as the household goods, the hand tools and SLC were not listed on the schedules, but testified that she gave all the information for the schedules and statements to her bankruptcy lawyer. She also admitted that she and her husband had failed to list a satellite system lease, two lawsuits in which the debtors were defendants, priority debts for child support and payroll taxes owed by SQ and Blondies, as well as the fact that the Schermers were co-debtors on an obligation owed by SQ. Mrs. Schermer also conceded that some of the errors and omissions were corrected in the amended schedules and statement of financial affairs, though some remained uncorrected.

Although Mrs. Schermer stipulated that she signed her schedules and statements after verifying them, she offered explanations for some of the omissions and errors. She maintained that the balance listed for the debtors' bank account was correct at the time the schedules were prepared. She testified that SLC was omitted from the schedules because the company had been "closed" since August 2002, although it had not been formally dissolved. She insisted that it had no value in any event. Concerning the debtors' failure to list a priority debt for payroll taxes owed by the companies they owned, Kimberly Schermer stated that the debtors did not know they were personally liable for those taxes. She also stated that she and her husband were not aware that they had personal liability for any corporate debt of SQ.

3

Mrs. Schermer testified that the debtors did not know there was a lease for the satellite system. She believed that they were merely paying a monthly fee for it. Regarding the loss of items in the shed, at trial she said that she could not remember when the theft took place, although her Rule 2004 examination testimony indicated it was within the year before the bankruptcy filing. Finally, the lawsuits were apparently omitted because the debtors believed they had been dropped.

Brett Schermer also testified at trial. He stipulated to his signature on all the relevant documents, and testified that he agreed with his wife's testimony and that his own responses to the questions would not differ from hers. He did specifically state that he knew he remained liable for child support despite his bankruptcy.

The Stampleys failed to offer independent proof of the value of any of the omitted or allegedly undervalued items.[1] For example, there was no evidence at all as to the value of the Monroe collectibles, and Kimberly Schermer testified at trial that her jewelry was worth no more than the $10 scheduled value. The Stampleys also offered no evidence to counter the debtors' contention that SLC has no value.

## **Discussion**

To prevail under 11 U.S.C. §727(a)(4), the Stampleys must prove that:

    (1) The debtors made a statement under oath;
    (2) The statement was false;
    (3) The debtors knew the statement was false;
    (4) The debtors made the statement with fraudulent intent; and
    (5) The statement related materially to the bankruptcy case.

---

[1] In fact, some evidence the Stampleys offered at trial related to omissions and misstatements that were not cited in the complaint. Although, debtors' counsel objected to the introduction of much of this evidence, the Court admitted some of it for the limited purpose of showing the debtors' intent.

4

*Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992). In this case, there is no doubt that the Schermers made false statements on their schedules and statement of financial affairs, which were not corrected despite their amendment. They have acknowledged that they omitted certain assets and financial information and erroneously listed other items. Also, the debtors acknowledged that many of their statements were not completely true and correct. The Stampleys therefore have proven the first three elements necessary to deny the discharge under section 727(a)(4).

The Stampleys also had to prove the materiality of the false statements. The subject of an allegedly false oath is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of his property." *Beaubouef*, 966 F.2d at 178. With the exception of the omission of the priority debts that are not subject to discharge in chapter 7, [2] all the debtors' omissions and errors relate to their assets, property and business dealings. Consequently, although most of the omitted assets are of questionable value to the estate, they are material, under Fifth Circuit jurisprudence.[3]

The final requirement for denying a discharge under 11 U.S.C. §727(a)(4) is fraudulent intent. The Stampleys argue that the debtors' multiple omissions and misstatements on their schedules and statements constitute at least reckless disregard for the truth. Reckless indifference to the truth is widely recognized as tantamount to fraud for purposes of §727(a)(4). *See Matter of Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001). However, the party objecting to a debtor's discharge based upon false oaths must prove

---

[2] *See* 11 U.S.C. §§523(a)(1) and (5). Both taxes and child support are non-dischargeable.

[3] Even worthless assets or those with minimal value are material and must be disclosed by debtors in their schedules and statements of financial affairs. *Beaubouef*, 966 F.2d at 178.

that the information was omitted specifically to perpetrate fraud, and not merely because the debtor was careless or failed to fully understand his attorney's directions. *In re Dubrowsky*, 244 B.R. 560, 571-2 (E.D.N.Y. 2000).

The debtors offered plausible explanations for their omission or inadequate description of most of the assets and liabilities. They attempted to correct the original errors and omissions with amendments to the schedules and statement of financial affairs. The Court concludes that the Schermers' testimony that they did not intend to hide any assets or business dealings and disclosed information to the best of their knowledge is credible. Accordingly, the evidence does not support a conclusion that the debtors possessed the intent to defraud that is required to deny their discharge under Bankruptcy Code section 727(a)(4).

The debtors say they gave their lawyer information that they believed was required to accurately complete their schedules and statements of financial affairs. Either the debtors or their attorney ultimately made erroneous decisions regarding items to be included on the filings. Debtors and their lawyers cannot be allowed to determine on their own whether information called for by the schedules and statement of financial affairs is material. They have a duty to disclose fully all information sought by the forms, so that trustees, creditors and the Court may judge for themselves whether information is material.

Under other circumstances, the debtors' omissions and errors may have cost the Schermers their discharge. However, the Court may consider the value of omitted assets both for determining the debtor's intent, as well as for the purpose of addressing materiality. *In re Pond*, 221 B.R. 29, 32 (Bankr. M.D. Fla. 1998). A false oath relating

6

to an asset of minimal value, may "tend to vitiate" the fraudulent intent of the debtor. *In re Acuri*, 116 B.R. 873, 881 (Bankr. S.D.N.Y. 1990).

These debtors omitted assets that were not proven to have more than inconsequential value. This finding supports the Court's conclusion that the debtors did not intend to defraud creditors or hide assets. Moreover, the debtors' omission of potential creditors from their schedules prejudices them more than other parties.[4] On the record here, the Court concludes that the debtors' omissions and misstatements resulted from carelessness and ignorance, rather than fraudulent intent.

## Conclusion

The Court concludes that the Stampleys have not carried their burden of proof under 11 U.S.C. §727(a)(4), and will dismiss the Complaint Objecting to Discharge.

Baton Rouge, Louisiana, September 23, 2003.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[4] As defendants in the omitted lawsuits, the debtors bear the risk of not listing the suits and opposing parties, and having the claims judged non-dischargeable under 11 U.S.C. §523(a)(3).

7